(C.D. 4064)

IRVING W. RICE & Co., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided August 20, 1970)

*Siegel, Mandell & Davidson* (*Joseph S. Kaplan* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before RICHARDSON, LANDIS, and NEWMAN, Judges

LANDIS, Judge: This protest involves merchandise imported from Japan described on the invoice as R–479 extension mirrors, in copper coated steel, nickel/chrome plated, 7 inches in diameter, magnifying and plain.[1] The one plain side is a conventional mirror. The other, magnifying side, is for close shaving and cosmetic work on the face. The mirrors have a rim or frame of base metal.

Plaintiff claims that the extension mirrors, which customs at New York assessed at 33 per centum ad valorem under TSUS (Tariff Schedules of the United States) item 544.51, are properly dutiable at only 17 per centum ad valorem under TSUS item 652.70. The crux of this dispute is that both of those dutiable items cover mirrors in different context, as follows:

Classified:

SCHEDULE 5. – NONMETALLIC MINERALS AND PRODUCTS
Part 3. – Glass and Glass Products

\*    \*    \*    \*    \*    \*    \*

Subpart B. – Flat Glass and Products Thereof

\*    \*    \*    \*    \*    \*    \*

Mirrors, made of any of the glass described in items 541.11 through 544.41, with or without frames or cases (except framed or cased mirrors of precious metal, and mirrors designed for use in instruments):

| | | |
|---|---|---|
| 544.51 | Not over 1 sq. ft. in reflecting area__ | 33% ad val. |
| | \*   \*   \*   \*   \*   \*   \* | |
| 544.54 | Over 1 sq. ft. in reflecting area_____ | \* \* \* |

Claimed:

SCHEDULE 6. – METALS AND METAL PRODUCTS
PART 3. – METAL PRODUCTS

\*    \*    \*    \*    \*    \*    \*

Subpart F. – Miscellaneous Metal Products

\*    \*    \*    \*    \*    \*    \*

Photograph, picture, and similar frames; mirrors; all the foregoing of base metal, whether or not coated or plated with precious metal:

| | | |
|---|---|---|
| 652.70 | Not coated or plated with precious metal _____ | 17% ad val. |
| 652.72 | Coated or plated with precious metal _____ | \* \* \* |

---

[1] Protest claim is abandoned as to mirrors invoiced as item R–485.

On trial, Mr. Alfred H. Bloom, president of Irving W. Rice & Company, plaintiff in this case, testified. It is stipulated that the extension mirrors are in chief value of base metal, not coated or plated with precious metal. Six exhibits complete the record. Exhibit 1 is a sample of the involved extension mirror. The remaining five exhibits illustrate physically and in pictures other kinds of mirrors. Both sides have filed briefs.

The sum of the record reviewed by plaintiff to support the claim under TSUS item 652.70, is as follows:

> This case deals with the classification of a two-sided shaving mirror, stipulated to be in chief value of base metal unplated with precious metal (R 61). The mirror contains a reflecting surface and a magnifying surface, each 7 inches in diameter, enclosed in a metal rim which is mounted in a harp. The harp surmounts an upright post which is attached to an expansion arm which is in turn connected by swivel joints to a wall bracket. The mirror was classified as a glass mirror at the rate of 33% ad valorem in Item 544.51, TSUS, although the most valuable component material is base metal rather than glass. A sample of the mirror, marked Exhibit 1, is included in the record in this case (R 12). The mirror is identified on the commercial invoice as Item R-479 (R 11).
>
> All the testimonial evidence offered to the Court was presented by Alfred H. Bloom, president of the plaintiff importer (R 5 *et seq.*).
>
> The manufacturer silvers a flat glass disc and heats, bends, and silvers a second glass disc in order to produce the reflecting and magnifying surfaces of the mirror respectively. These are mounted in an enclosing rim or frame. This subassembly is in turn fitted to the bracket and arm described above, (R 13, 34, 45–47), thereby completing the mirror.
>
> R-479 cannot be used in its intended manner without its support features (R 54). [Plaintiff's brief, pages 2–3.]

Both sides agree that the issue to be decided is whether TSUS item 544.51 covers all mirors made of any of the glass described in items 541.11 through 544.41, with or without frames or cases, regardless of their component material in chief value. Framed or cased mirrors of precious metal, and mirrors designed for use in instruments are specifically excepted from classification under TSUS item 544.51. Plaintiff, citing General Headnote 9(f)(i), contends that framed mirrors of base metal are also excluded from classification under TSUS item 544.51. General Headnote 9(f)(i) reads as follows:

> 9. *Definitions.* For the purposes of the schedules, unless the context otherwise requires—
>
>     \*      \*      \*      \*      \*      \*      \*

(f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e.g., "furniture *of* wood", "woven fabrics, *wholly of* cotton", etc.), have the following meanings:

(i) "of" means that the article is wholly or in chief value of the named material;

\*    \*    \*    \*    \*    \*    \*

Pursuant to the above headnote, mirrors of base metal, provided for in plaintiff's claimed TSUS item 652.70, quite plainly means mirrors wholly or in chief value of base metal. Framed or cased mirrors of precious metal, excluded from TSUS item 544.51, also means framed or cased mirrors wholly or in chief value of precious metal. Plaintiff, in its brief, poses the question whether there is anything in the context of TSUS item 544.51 that says the general headnote, *supra*, should be ignored when classifying framed mirrors in chief value of base metal. Postdate to plaintiff's brief filed March 28, 1969, and as we discussed that general question in the context of the TSUS item 544.51 mirrors, with or without frames in *Broadway Hale Stores, Inc.* v. *United States*, 62 Cust. Ct. 507, C.D. 3816 (decided April 30, 1969), we are of the opinion there is, and overrule the protest.

In *Broadway Hale, supra*, customs classified mirrors and wood mirror frames, separately invoiced and packed, as a single commerical entity, namely mirrors with or without frames, under TSUS item 544.51. There we sustained the claim that the wood mirror frames should be separately classified as mirror frames, of wood, for the following reasons:

When we again read the background in explanation of items 544.51 and 544.54, cited *supra*, we are of opinion that the specification "mirrors, with or without frames" was intended to avoid disruptive classification, which could only occur in the importation of "framed" mirrors. TSUS item 207.00 provides for "articles not specially provided for, of wood". The term "of", as used in the tariff schedules, "means that the article is wholly or in chief value of the named material". TSUS, General Headnotes and Rules of Interpretation 9(f)(i). The frames in this case are more valuable than the mirrors. Assuming the mirrors had been imported mounted in the frame, and absent the words "with or without frames", the "disruption" is apparent. The article, a framed mirror, would be in chief value of wood. With the words, there is no problem of the comparative value of components. In the condition as imported in this case, where there were two articles, mirrors and frames, separately packed, the problem does not come up since it is logical to expect that the separate entities would be separately classified. It is apparent to us, therefore, that the classification of the identifiably separate commercial entities imported in this case, mirrors and frames, as one article, goes beyond what was intended by the words "with or without frames", namely "framed" mirrors. \* \* \*

\*    \*    \*    \*    \*    \*    \*

The meaning we have given the words "mirrors, with or without frames" is also consistent with the parenthetical exception to that specification in item 544.51 reading "except framed or cased mirrors of precious metal". As headnoted in the *Five Per Cent Cases*, 6 Ct. Cust. Appls. 291, T.D. 35508, "the exception of a particular thing from the operation of the general words of a statute shows that in the opinion of the lawmaker the thing excepted would be within the general words had not the exception been made." The relevant exception, noted above, is clearly limited to mirrors "framed" with precious metal. The lawmakers were not concerned with frames imported separate from mirrors in the same shipment. It makes sense that they were concerned that "framed" mirrors be classified as mirrors in item 544.51 rather than by the component of chief value with the exception of mirrors framed with precious metal and mirrors designed for use in instruments. [62 Cust. Ct., pages 511, 512.]

TSUS item 544.51 covers mirrors which had been separately provided for in paragraph 230(d) of the Tariff Act of 1930.[2]

Plaintiff, citing cases, readily admits that glass mirrors, with or without frames or cases, *not specially provided for*, remained classified in paragraph 230(b) whether or not in chief value of glass. The admission is consistent with the *Broadway Hale* discussion above. Recognizing the continued vitality of classifying TSUS item 544.51 mirrors, with or without frames or cases, whether or not in chief value of glass *when not specially provided for*, plaintiff contends that that vitality must be and is diluted as to mirrors in chief value of base metal, specifically provided for in TSUS item 652.70. We are not persuaded to accept plaintiff's contention and initially note that classification under TSUS item 544.51 is not conditioned on the fact that the mirrors are not specially provided for.

Plaintiff's supporting argument starts with the proposition that under the 1930 Tariff Act, in response to the phrase "with or without frames or cases" in paragraph 230(b), the court developed the so-called "predominant feature doctrine". The connection is at best incidental. The "predominant feature" rule did not develop as a "doctrine" for determining the meaning of the phrase "with or without frames or cases", but out of necessity for a rule of law and guide to the classification of imported articles like vanity cases, powder boxes, elaborate purses, handbags, and many other articles to which mirrors are attached. As to such imported articles, the "doctrine" is directed, not to the question of their component material of chief value, but to the question as to whether the articles are predominantly *mirrors* in frames or cases or are more than *mirrors* in frames or cases. *United States* v. *Bonwit, Teller & Co. et al.*, 17 CCPA 96, T.D. 43429 (1929); *Engine Imports, Inc., et al.* v. *United States*, 49 Cust. Ct. 248, Abstract 67094 (1962). While the component material of chief value may con-

---

[2] Tariff Classification Study, Schedule 5, page 138.

ceivably have some weight on the overall question of whether the "predominant feature" of an imported article is a mirror (as in a case where the glass mirror, exclusive of the frame or case, is itself the component material of chief value),[3] once it is determined the article is a mirror, the phrase "with or without frames or cases" removes the issue as to whether or not the article is in chief value of glass. Since the articles in this litigation are concededly mirrors, plaintiff's use of the "predominant feature doctrine" is ill conceived and misplaced.

This brings us to plaintiff's understanding of how the relevant TSUS statutory provisions tie together. To preserve the flavor of plaintiff's understanding, we best quote from plaintiff's brief (page 8) as follows:

> The proposed classification [TSUS item 652.70] asserted by the plaintiff conforms to the foregoing proposition [continuing vitality of the predominant feature doctrine and language "with or without frames or cases", in absence of specific provision for mirrors], and is furthermore consistent with a natural and unstrained application of the provisions of the Tariff Schedules, including Items 544.51, TSUS, Item 652.70, TSUS, and General Headnote 9(f)(i), TSUS. Paragraph 230(b), Tariff Act of 1930, was qualified by a "not specially provided for" clause. A paragraph in the same language as Item 652.70, TSUS, had it existed in the Tariff Act of 1930, would have been such a special provision. If the Congress, in enacting the TSUS, had desired that Item 544.51 have the same effect as Paragraph 102 of the Tariff Act of 1894, it could have achieved that result by resurrecting the omnipotent "all" before the word "mirrors" in Item 544.51, TSUS, and dropping the less broad phrase "with or without frames or cases." Instead, the middle ground of continuing the "predominant feature" doctrine, in a provision for mirrors modified by the statutorily defined "of" and the ensuing enumeration of the types of glass used in the manufacture of mirrors, was adopted. Absent a specific provision to cover given merchandise, such as Item 657.20, TSUS, a mirror whose reflecting surface is made of glass is to be classified in Item 544.51, TSUS, component material of chief value notwithstanding. Absent such a specific competing provision, the language "with or without frames or cases" may be said to establish a contrary context within the meaning of General Headnote 9(f)(i).

Plaintiff's reliance on the historical context of various tariff provisions for mirrors, particularly paragraph 230(b), ill fits a natural and unstrained application of TSUS items 544.51 and 652.70. We earlier noted that TSUS item 544.51 classifies mirrors which were separately provided for in paragraph 230(b). But the two provisions are materially different. Paragraph 230(b), as plaintiff points out, addresses

---

[3] H.R. Rep. No. 7, 71st Cong., 1st Sess. 34 (1929) on H.R. 2667 (Tariff Readjustment—1929) ; S. Rep. No. 37, 71st Cong., 1st Sess. 10 (1929) on H.R. 2667.

itself to all glass mirrors, not specially provided for. TSUS item 544.51 classifies mirrors made of any of the glass described in items 541.11 through 544.41 with only certain exceptions not here relevant. The described glass may cover a wide field, but mirrors made of any other kind of glass are not classified in TSUS 544.51. It follows that TSUS item 544.51 is much more specific than was paragraph 230(b) and explains, in plaintiff's words, why "a paragraph in the same language as item 652.70, TSUS, had it existed in the Tariff Act of 1930" would have been more specific than paragraph 230(b). The specific reference in TSUS item 544.51, to mirrors made of any of the described glass, refutes plaintiff's projected idea that we would construe TSUS item 544.51 to include all glass mirrors. We could not give it such construction. But mirrors, with or without frames, made of any of the described glass, are classified in TSUS item 544.51 regardless of the component material of chief value, excepting only framed or cased mirrors of precious metal, and mirrors designed for use in instruments. The lawmakers particular exception of framed or cased mirrors of precious metal (i.e. wholly or in chief value of precious metal) from the reach of TSUS item 544.51, in our opinion, clearly signals an intention that TSUS item 544.51 not be judicially diluted beyond the plain terms of the particular exception.

Neither side has argued what mirrors are covered by TSUS item 652.70. On this record, that question must remain open. We do know that TSUS items 652.70 and 652.72 combine into "two rate descriptions a number of existing rate descriptions in paragraphs 339 and 397" of the Tariff Act of 1930.[4] It suffices that, in classifying mirrors made of described kinds of glass, TSUS item 544.51 is relatively more specific than is TSUS item 652.70 which classifies a much broader class of mirrors, without regard to the kind of reflecting glass or other reflecting material, of base metal. The provisions are, in their relevant parts, mutually exclusive and the mirrors embraced within TSUS item 544.51 are not covered by TSUS item 652.70.

The protest is overruled.

(C.D. 4065)

---

[4] Tariff Classification Study, Schedule 6, page 201,